# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAWN PARKS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 10-30120-FDS |
| TOWN OF LEICESTER, CITY OF WORCESTER, SERGEANT JOSEPH FONTAINE, individually, and OFFICER JOHN DOE, individually, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER
## ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This action arises out of an arrest based on mistaken identity. Plaintiff Dawn Parks alleges that she was placed under arrest, and forced to spend the night in a jail cell, based solely on the fact that she once used the same name as the real criminal suspect. She has brought suit against defendants the Town of Leicester, Sergeant Joseph Fontaine of the Leicester Police Department, the City of Worcester, and Officer "John Doe" of the Worcester Police Department, asserting claims under both federal and state law.

Defendants the Town of Leicester and Sergeant Fontaine have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion will be allowed in part and denied in part.

## I. Background

For purposes of a motion to dismiss, the Court takes the factual allegations in the complaint as true.

On June 25, 2007, an elderly man was assaulted and robbed in Leicester, Massachusetts, by a man and a woman. When the Leicester police, including Sergeant Joseph Fontaine, investigated the incident, the victim stated that the female assailant was his niece, whom he identified as Dawn Spencer. "Dawn Spencer" was a name that plaintiff had used during 1991-1994 when she was married to a man with the last name of Spencer. She divorced him, however, in 1994, and has not used that name since.

According to the complaint, the Leicester police performed a computer search of probation records for the name "Dawn Spencer"; they obtained no other information regarding the assailant. The records search uncovered plaintiff's criminal record, which had been created when she was using the name "Dawn Spencer." Based on that information, Fontaine filed a criminal complaint against Dawn M. Spencer.[1] On July 5, 2007, he obtained an arrest warrant for "Dawn M. Spencer a/k/a Dawn M. Johnson, Worcester Mass. 01607," with street address listed as "unknown."

On June 4, 2008, while plaintiff was asleep, officers from the Worcester police department, including Officer "John Doe," entered her apartment and placed her under arrest. When the officers told plaintiff that they had an arrest warrant for Dawn Spencer, she explained that she had not used that name in more than 13 years and that her current name was Dawn Parks.

---

[1] Plaintiff's probation record was created under the name Dawn Spencer a/k/a Dawn Marie Johnson a/k/a Dawn Martin. Dawn Marie Johnson is plaintiff's maiden name.

Despite that explanation, she was arrested and taken to the jail at Framingham, where she was placed overnight in a cell. During that process, she was not allowed to make a telephone call. The following day, she was arraigned and released on personal recognizance. Not having any means of transportation, she was forced to walk approximately nine miles to her apartment. She contends that she had to obtain medical attention for dehydration and later psychiatric treatment.

The actual identity of the alleged female assailant was Dawn Lemelin. The charges against plaintiff were dismissed.

On May 24, 2010, plaintiff filed a seventeen-count complaint in the Worcester Superior Court against the Town of Leicester, Fontaine, the City of Worcester, and Officer "John Doe." The complaint alleged claims under 42 U.S.C. § 1983 (Counts 1-4), under Mass. Gen. Laws ch. 12 § 11I (Counts 5-8), and for negligence (Counts 9-12) against all defendants. It also alleged claims of false arrest and false imprisonment against Officer "John Doe" (Counts 13-14), intentional infliction of emotional distress against Fontaine and Officer "John Doe" (Counts 15-16), and assault against Officer "John Doe" (Count 17).

On June 11, 2010, defendants removed the case to this Court pursuant to 28 U.S.C. § 1331. On September 10, 2010, the Town of Leicester and Fontaine filed a motion to dismiss the counts against them for failure to state a claim. In her opposition, plaintiff agreed to dismiss without prejudice the claims alleging negligence and intentional infliction of emotional distress against Fontaine (Counts 9 and 15).

While the motion to dismiss was pending, plaintiff filed a motion to amend her complaint. The Court granted that motion to the extent that it permitted her to add the following allegations: (1) that plaintiff complied with the presentment requirements of Mass. Gen. Laws ch. 258 § 4 as

3

to both the City of Worcester and the Town of Leicester, and (2) the facts known to Fontaine when he obtained a criminal complaint against plaintiff did not establish probable cause for a complaint or an arrest warrant. Plaintiff filed the amended complaint on February 23, 2011.

## II. Analysis

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949. "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Centro Medico del Turabo*, *Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### A. Claims under § 1983

The Town of Leicester and Sergeant Fontaine have moved to dismiss the claims under 42 U.S.C. § 1983 on essentially three grounds: (1) failure to state a violation of a constitutional right

4

by Fontaine, (2) qualified immunity, and (3) failure to state a claim against the Town within the meaning of *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

### 1. The Constitutional Right at Issue

To establish a claim under § 1983, plaintiff must show that she was "deprived of a right, immunity, or privilege secured by the constitution or laws of the United States by a person acting under color of state law." *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir. 1991). Sergeant Fontaine was clearly acting under color of state law as a police officer employed by the Town of Leicester during the course of the events that gave rise to this action; the issue is whether he deprived plaintiff of a constitutional right. According to the complaint, the constitutional right at issue is the right to be secure from unreasonable searches and seizures under the Fourth Amendment, as applicable to the states under the Fourteenth Amendment.

"The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause." *Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989), *citing Beck v. Ohio*, 379 U.S. 89, 91 (1964). Accepting the allegations in the complaint as true, Fontaine used only the name Dawn Spencer to investigate the assault and made no other efforts to ascertain whether the person he identified was the right person. There was no probable cause to file a criminal complaint or seek an arrest warrant on that limited basis. Because plaintiff alleges that she was arrested without probable cause, she has alleged a violation of her Fourth Amendment right that, at least on its face, is actionable under § 1983. *Santiago*, 891 F.2d at 383 (stating that a plaintiff can seek redress under § 1983 if there was no probable cause for her arrest). Although defendants argue that Fontaine merely requested and obtained a criminal complaint against plaintiff, according to the complaint his actions led directly to the issuance of an

5

arrest warrant that ultimately resulted in her detention. *See Britton v. Maloney*, 196 F.3d 24, 29 (1st Cir. 1999) (stating that "the filing of criminal charges triggers the issuance of a warrant which leads to an arrest and thereby effects a 'seizure' within the meaning of the Fourth Amendment").[2] For purposes of Fed. R. Civ. P. 12(b)(6), the complaint states a claim under § 1983.

### 2. **Qualified Immunity**

Defendants argue that even if plaintiff has stated a claim for violation of § 1983 against Fontaine, he is nonetheless shielded from liability by the doctrine of qualified immunity. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Following *Pearson v. Callahan*, 555 U.S. 223 (2009), the First Circuit abandoned its former three-part qualified immunity analysis and adopted the two-part test articulated in *Pearson*. *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). Under *Pearson* and *Maldonado*, the relevant inquiries: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

As noted, the allegations of the complaint—at least on their face—make out a claim for violation of plaintiff's right under the Fourth Amendment to be free from unreasonable seizure.

---

[2] It is unclear from plaintiff's filings whether Fontaine played a role in obtaining a warrant for her arrest. The complaint states that Fontaine requested and obtained a criminal complaint against plaintiff and that "the police" obtained the arrest warrant. However, plaintiff states in her opposition to the motion to dismiss that Fontaine both filed the criminal complaint and obtained the arrest warrant. Plaintiff's Opposition at 5. Although the Court is limited to the four corners of the complaint for purposes of deciding a motion to dismiss, in light of the allegations that the investigation for the crime was conducted by the Leicester Police Department including Fontaine and that Fontaine filed the criminal complaint, it is not unreasonable to draw the inference at this pleading stage that Fontaine may also have been involved in obtaining the arrest warrant.

That constitutional right was clearly established at the time of the events at issue. *See Abreu-Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001) ("It has been clearly established for a very long time that the Fourth Amendment requires that arrests be based on probable cause.") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 420 (1st Cir. 2010) ("It is clearly established law that the Fourth Amendment requires that arrests be based upon probable cause.") (*citing Beck*, 379 U.S. at 91).

Accordingly, the § 1983 claim against Sergeant Fontaine is not subject to dismissal under Fed. R. Civ. P. 12(b)(6) on grounds of qualified immunity.

### 3. **Municipal Liability**

Defendants also argue that the complaint fails to state a claim against the Town for violation of § 1983 because it does not allege that any policy or custom of the Town caused the violation.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *See Kelley v. Laforce*, 288 F.3d 1, 9 (1st Cir. 2002), citing *Monell*, 436 U.S. at 690-691.

In some instances, the "policy or custom" consists of the manner in which employees are trained or supervised. A municipality may be liable under § 1983 for failure to train its police officers if "that failure causes a constitutional violation or injury and 'amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005), citing *City of Canton v. Harris*, 489 U.S. 378, 388

7

(1989).

Here, the complaint alleges that the Town of Leicester failed to train its police officers adequately in the proper methods of identifying criminal suspects prior to seeking criminal complaints, which caused the deprivation of her constitutional right and demonstrated a deliberate indifference to her constitutional rights. Whether plaintiff can prove that claim is not the issue at the pleadings stage. Accepting the allegations as true and drawing reasonable inferences in favor of plaintiff, the Court is not prepared to find at this stage that the complaint fails to state a *Monell* claim under § 1983.

### B. Claims under Mass. Gen. Laws ch. 12, § 11I

The Massachusetts Civil Rights Act provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, § 11I. A threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; intimidation "involves putting in fear for the purposes of compelling or deterring conduct"; and coercion means "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). The MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do. *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009).

Plaintiff here was arrested, which of course can constitute a form of coercion. The problem, however, is that plaintiff was not arrested in order to cause her to give up some other

8

right (for example, the right to vote); the arrest itself was the constitutional violation. The Supreme Judicial Court of Massachusetts has ruled that "[a] direct violation of a person's rights does not by itself involve threats, intimidation, or coercion and thus does not implicate the [Massachusetts Civil Rights] Act." *Longval v. Commissioner of Correction et al.*, 404 Mass. 325, 333 (1989).[3] In other words, the element of "threats, intimidation, or coercion" must be separately present in addition to the violation of rights. *See Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 93 (1999) (stating that *Longval* "affirmed the requirement under the [Massachusetts Civil Rights Act] that proof of 'threats, intimidation, or coercion' be in addition to the interference with the exercise or enjoyment of secured rights").

In *Longval*, a prisoner who was shackled and handcuffed as part of a transfer to a segregation unit brought a claim under the MCRA, claiming a violation of his due process right to a hearing prior to the transfer. Although the Supreme Judicial Court held that resolution of the issue on summary judgment was premature, it noted the following:

> . . . we see no coercion, within the meaning of the State Civil Rights Act, simply from the use of force by prison officials, authorized to use force, in order to compel a prisoner to do something he would not willingly do, even if it turns out that the official had no lawful right to compel the prisoner to take that action. Shackling and handcuffing [the plaintiff] and taking him to Concord was not by itself coercive under the Civil Rights Act, as [the plaintiff] claims. If the officials had some further purpose in treating [the plaintiff] as they did, threats, intimidation, or coercion might be involved. Conduct, even unlawful conduct, however, lacks these qualities when all it does is take someone's rights away directly.

---

[3] The Court disagrees with plaintiff's contention that this principle was "significantly narrowed" or rejected in *Planned Parenthood League of Massachusetts v. Blake*, 417 Mass. 467 (1994). *See Blake*, 417 Mass. at 473 (stating that *Longval* involved direct action against the plaintiff which "by itself" did not amount to a violation of the Massachusetts Civil Rights Act, but that liability can be established if direct action "also" includes threats, intimidation or coercion).

9

*Id.* (internal citations omitted).

Although the holding in *Longval* is somewhat ambiguous, subsequent authorities have held that normally lawful restraint may constitute coercion under the MCRA if the causation requirement is met—in other words, if such restraint is applied in order to cause the plaintiff to give up his constitutional rights. *See Davis v. Rennie*, 264 F.3d 86, 112 (1st Cir. 2001) (restraint of mental health patient by employees was coercion where it furthered constitutionally prohibited beating); *Bullock v. City of Bos.*, 1990 WL 150017, at *2 (D. Mass. Sep. 20, 1990) (refusal by nurse to treat sick inmate was coercion if in furtherance of constitutional deprivations); *Langton v. Sec'y of Pub. Safety*, 37 Mass. App. Ct. 15 (Mass. App. Ct. 1994) (involuntary psychological examination of inmate satisfied coercive conduct element of MCRA if intended to compel his silence); *LeMay v. Dubois*, 1998 WL 151174, at *1 (Mass. Super. Ct. Mar. 23, 1998) (disciplinary action against prisoner satisfied coercive conduct element if meant to chill further complaint). *Cf. Gallagher v. Commonwealth of Mass.*, 2002 WL 924243, at *1 (D. Mass. Mar. 11, 2002) (no violation of MCRA where excessive force against prisoner was not done in furtherance of violating some additional right).[4]

The present case involves a "direct" violation: the allegedly coercive act (the arrest) was itself the violation. The complaint does not contain any facts from which the Court can infer the use of "threats, intimidation, or coercion" on the part of Sergeant Fontaine or the Town by which

---

[4] In *Davis*, five mental health workers restrained the plaintiff, an involuntarily committed mental patient, while he was beaten by a sixth worker. The First Circuit found that the restraint could constitute coercion under the MCRA. 264 F.3d at 111-12. Citing *Longval*, the court noted that "absent [the sixth worker's] punching, the [five workers'] participation in the restraint would not have violated Davis' rights under the MCRA," because mental health workers normally have the right to restrain patients in a facility. *Id.* at 112 n.18.

10

they interfered with plaintiff's right to be free from arrest without probable cause.[5]

In the absence of any facts to support the allegation that this right was interfered with by means of threats, intimidation, or coercion, the claims against Fontaine and the Town under Mass. Gen. Laws ch. 12, § 11I will be dismissed.[6]

### C. Negligence Claims Against the Town of Leicester

The Town argues that the claim of negligence against it under the Massachusetts Tort Claims Act should be dismissed pursuant to Mass. Gen. Laws ch. 258 §§ 10(b) and 10(j).[7]

Mass. Gen. Laws ch. 258 § 10(j) bars imposition of liability on a public employer for "any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." The Town contends that § 10(j) applies in this case because the original cause of plaintiff's injury was not any action by the Town or Sergeant Fontaine, but the assault on the

---

[5] Plaintiff argues that arrest and detention are intrinsically coercive, citing *Sarvis v. Boston Safe Deposit and Trust Co.*, 47 Mass. App. Ct. 86, 93 (1999). In *Sarvis*, however, the arrest and detention were not a direct violation of the plaintiff's rights. Rather, the right on which the plaintiffs in *Sarvis* based their claim under the MCRA was the right not to be evicted from their residence except by summary process. *Sarvis*, 47 Mass. App. Ct. at 90. Thus, the court in *Sarvis* stated that the defendants in that case "attempted to interfere with the plaintiffs' right to a summary process hearing by threatening them with arrest and then bringing about their arrests. The threats and coercion were not a direct violation of the right to a summary process hearing, but the means by which the defendants interfered with its enjoyment." *Id.* at 93. Here, in contrast, plaintiff's arrest and detention comprise the direct violation of plaintiff's right to be free from arrest without probable cause.

[6] Because the Court dismisses the claims under Mass. Gen. Laws ch. 12, § 11I on the basis that plaintiff has failed to allege any "threats, intimidation or coercion" on the part of the defendants, it will not reach the parties' arguments regarding whether a municipality can be held liable under Mass. Gen. Laws ch. 12, § 11I.

[7] Defendants also argued in their motion to dismiss that the negligence claim should be dismissed because the complaint did not allege compliance with the presentment requirement of Mass. Gen. Laws 258 § 4. After defendant's motion was filed, plaintiff submitted a proposed amended complaint that alleged compliance with Mass. Gen. Laws 258 § 4, and the Court granted plaintiff leave to amend her complaint to include that allegation. Thus, the defendants' argument with respect to Mass. Gen. Laws 258 § 4 is now moot.

elderly man, who then mistakenly identified plaintiff as one of the assailants. However, the complaint does not actually state that the victim of the assault identified plaintiff as one of the assailants. Rather, according to the complaint, the victim identified the assailant as his niece, Dawn Spencer, and it was later discovered that the correct name of the assailant was Dawn Lemelin. There is no reason to believe from the complaint that the victim made any mistake in identifying the assailant—that is, the complaint does not suggest that Dawn Lemelin was not the victim's niece or that she did not at one point employ the name "Dawn Spencer." The mistake that led to the arrest of the wrong "Dawn Spencer," and that resulted in the injury to plaintiff, was made in the course of the investigation by Fontaine and the Leicester Police Department. Accordingly, the Court rejects the Town's argument that its liability under the Massachusetts Tort Claims Act is barred by the "original cause" exception set forth in § 10(j).

The Court does find, however, that the Town's liability is barred by Mass. Gen. Laws ch. 258 §10(b). Mass. Gen. Laws ch. 258 §10(b) provides immunity from tort claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." In order to determine whether certain conduct falls within the "discretionary function" exception, a court must first determine "whether the governmental actor had any discretion at all as to what course of conduct to follow," then determine "whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability," that is, "discretionary conduct that involves policymaking or planning." *Harry Stoller & Co. v. Lowell*, 412 Mass. 139, 141 (1992).

The Supreme Judicial Court has specifically held that "the conduct of law enforcement

officials in investigating potentially criminal conduct and in seeking warrants for the arrest of those whom they investigate . . . fall[s] within the exception in §10(b)." *Sena v. Commonwealth*, 417 Mass. 250, 257 (1994). The court stated that the "decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest are based on considerations of, and necessarily affect, public policy." *Id.* at 256. The actions of Sergeant Fontaine in the instant case seem to fall within the holding of *Sena*. Fontaine investigated an assault and robbery upon an elderly man, making decisions along the way regarding "whether, when, how, and whom to investigate," *id.*, and filed a criminal complaint based on that investigation.

The court in *Sena* did note two possible exceptions to its holding: (1) "where the conduct of a defendant police officer in investigating a crime or in seeking a warrant violates officially established departmental procedures" and (2) where an officer "carelessly or recklessly misstates or fails to disclose relevant information he has to a magistrate evaluating a warrant application, and thereby subvert[s] the integrity of [the warrant process] by selling [the magistrate] shoddy merchandise without appropriate disclaimers." *Id.* at 257 n.5 (internal quotations omitted). The complaint does not, however, allege a failure by a law enforcement officer to disclose his failure to conduct a proper investigation to a magistrate evaluating a warrant application. Rather, as in *Sena*, plaintiff's claim focuses "specifically on the officer['s] alleged negligence in conducting [his] investigation" and "alleged negligence in assessing probable cause against plaintiff[] before seeking [a] complaint[] against [her]." *Id.* Thus, the claim of negligence against the Town is barred by Mass. Gen. Laws ch. 258 §10(b).

Finally, plaintiff argues in her opposition to the motion to dismiss that she has pleaded not only that the Town of Leicester is responsible for the negligent actions of Fontaine, but that the

13

town itself was negligent in the training and supervision of Fontaine. The count in the complaint alleging negligence against the Town of Leicester states only that the Town of Leicester is liable for negligence "committed by its employee Defendant Sergeant Fontaine because Defendant Sergeant Fontaine was acting within the scope of his employment at the time of his negligence." It does not mention anything about the Town being negligent in the training and supervision of Fontaine.[8] The Court cannot conclude based on these pleadings that plaintiff has given a fair notice of a claim of negligence against the Town of Leicester based on the training and supervision of Fontaine.

## III. Conclusion

The motion to dismiss for failure to state a claim upon which relief can be granted is

1. GRANTED as to defendants Sergeant Joseph Fontaine and the Town of Leicester on Counts Five and Six;

2. GRANTED as to defendant the Town of Leicester on Count Nine; and

3. DENIED as to defendants Sergeant Joseph Fontaine and the Town of Leicester on Counts One and Two.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: March 9, 2011                          United States District Judge

---

[8] The negligence count does incorporate by reference all previous paragraphs, which would include the count alleging a violation of § 1983; that count alleges that the town "showed a deliberate indifference to Plaintiff's constitutional rights" and "caused Plaintiff to suffer a deprivation of her constitutional rights" by its "[f]ailure to adequately train their officers in the proper methods to identify criminal suspects prior to seeking criminal complaints." But the complaint does not allege, much less allege clearly, any negligence on the part of the Town of Leicester in its training and supervision of Fontaine.