UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                                )
DAWN PARKS,                                          )
                                                                )
      Plaintiff,                                            )
                                                                )        Civil Action No.
      v.                                                     )        10-30120-FDS
                                                                )
TOWN OF LEICESTER, CITY OF               )
WORCESTER, SERGEANT JOSEPH         )
FONTAINE, individually, and                    )
OFFICER JOHN DOE, individually,            )
                                                                )
      Defendants.                                         )
_____)

MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

      This action arises out of an arrest based on mistaken identity.  In June 2007, an elderly

man was assaulted in Leicester, Massachusetts.  When defendant Sergeant Joseph Fontaine of the

Leicester Police Department responded to the scene of the crime, the victim told him that one of

the assailants was a woman named Dawn Spencer.  Based on that identification, Fontaine

searched a computerized criminal-history database for "Dawn Spencer" and found a record

associated with plaintiff Dawn Parks.  Parks, whose maiden name was Dawn Marie Johnson, had

married and taken the name Spencer in 1991, but she had stopped using that name after divorcing

her husband in 1994.  In 2000, she had remarried and taken the name Parks.

      Mistakenly attributing the June 2007 assault to Parks on the basis of her record in the

criminal-history database, Fontaine prepared an application for a criminal complaint against her.

The application was filed with the East Brookfield District Court, which granted it and issued an

arrest warrant for Parks on July 3, 2007.  About one year later, Parks was arrested by law enforcement officials who were conducting an operation to apprehend individuals with outstanding warrants.  Parks was held in jail overnight, but all charges were subsequently dismissed against her.

On May 21, 2010, Parks commenced this action against the Town of Leicester, Sergeant Fontaine, the City of Worcester, and Officer "John Doe" of the Worcester Police Department, alleging violations of both federal and state law.  All claims against Worcester and the Doe officer, as well as all state-law claims, have been dismissed.  The remaining claims arise under 42 U.S.C. § 1983 and allege that the Town of Leicester and Fontaine violated Parks's rights under the Fourth Amendment of the Constitution.

Defendants Fontaine and the Town of Leicester have now moved for summary judgment dismissing the § 1983 claims.  They have also moved to strike portions of plaintiff's statement of material facts and opposition memorandum.  For the reasons set forth below, the motion for summary judgment will be granted and the motion to strike will be denied as moot.

## I.  <u>Background</u>

The facts are stated in the light most favorable to plaintiff unless otherwise noted.

On June 25, 2007, an elderly man named Earl Smith was assaulted and robbed in Leicester, Massachusetts, by a man and a woman.  (Ex. 1 at 9-10).  Sergeant Joseph Fontaine, an officer in the Leicester Police Department ("LPD"), investigated the incident and spoke with the victim.  (*Id.*).  Smith identified the assailants as his niece and her boyfriend, stated that his niece was named Dawn Spencer, and may have provided the woman's approximate age.  (Ex. 1 at 11, 18-19, 30, 35; Ex. 2).  Smith told Fontaine that the assailants had been living with him but that

they attacked him after he accused them of buying heroin in Worcester.  (Ex. 2).

Fontaine also spoke with the victim's son-in-law, whose teenage son had witnessed the assault.  (*Id.* at 10, 13-14, 21).  The man reported that the female assailant kicked the elderly man while he was on the ground and that both assailants then fled toward nearby railroad tracks.  (*Id.* at 14, 21).  Fontaine and several other officers searched the area but were unable to find either suspect.  (*Id.* at 19).

Later that night, Fontaine searched several databases, including the "LEAPS" database of the Massachusetts Registry of Motor Vehicles and the criminal-history database of the Department of Probation, for records relating to any person with the name Dawn Spencer.  (Ex. 1 at 27-28, 30, 35, 47; Ex. 10).  The Probation database contained a criminal-history record for plaintiff that was filed under that name.  The record included her date of birth, social security number, and license-plate number.  (Ex. 1 at 27-30, 34, 35, 47; Ex. 2; Ex. 6 at 44-45; Ex. 10).

Plaintiff, whose maiden name was Dawn Marie Johnson, used the surname Parks at the time of Fontaine's search.  (Def. Facts ¶ 1, Ex. 4 at 35-39).  She had married and taken the surname Spencer in 1991.  (Def. Facts ¶¶ 2, 3).[1]  She divorced that husband in 1994, however, and has not used the name Spencer since then.  (*Id.*).  She remarried and took the name Parks in 2000 and has used that name thereafter.  (*Id.* at 38).  Plaintiff is not related to Earl Smith, the victim of the assault who identified his assailant as Dawn Spencer.  (Ex. 15 ¶ 7).

Based on the information obtained in the database search, Fontaine prepared an application for a criminal complaint against plaintiff.  In the application, he identified her as Dawn

---

[1] During her deposition, Parks stated that she was married to Spencer from 1992 to 1995.  (Ex. 4 at 37-38).  However, the parties agree in their statements of facts that the marriage began in 1991 and ended in 1994. The precise period when plaintiff was married is not material.

M. Spencer.  (Ex. 1 at 60; Ex. 3).  The application form that Fontaine used contains a checkbox to indicate whether the prosecutor is requesting an arrest warrant for the person to be charged.  (Ex. 3).  That box was not checked on the application that Fontaine prepared.  (*Id.*).  Fontaine signed the application on June 30, 2007, and the LPD court liaison officer filed it with the East Brookfield District Court on July 2, 2007.  (Ex. 1 at 54-55, 60; Ex. 3).  On July 3, the court issued a warrant for the arrest of "Dawn M. Spencer a/k/a Dawn M. Johnson, Worcester Mass. 01607," with her street address listed as "unknown."  (Ex. 5).  At that time, Fontaine was not aware that an arrest warrant was issued as a result of his application.  (Ex. 1 at 55, 65).

In June 2008, Darlene DeCaire, an officer in the Violent Fugitive Apprehension Section of the Massachusetts State Police, led a team of officers who were participating in "Operation Falcon."  (Ex. 6 at 6-8, 15).  Operation Falcon is a recurring nationwide operation conducted by the United States Marshals Service in which local, state, and federal law enforcement agents collaborate to apprehend persons with outstanding arrest warrants.  (*Id.* at 8).  During the June 2008 iteration of Operation Falcon, DeCaire's team, which included officers from the Worcester Police Department, was assigned to execute the outstanding warrant for plaintiff's arrest.  (*Id.* at 9-11).

On June 4, 2008, while Parks was asleep, DeCaire's team entered her apartment in Worcester, Massachusetts, and placed her under arrest.  (Ex. 4 at 33-35, 39-44; Ex. 6 at 24, 29-33).  When the officers told Parks that they had an arrest warrant for Dawn Spencer, she explained that she had not used that name for years, that her current name was Dawn Parks, and that she was not the person they were looking for.  (Ex. 4 at 35, 39).  She was nonetheless handcuffed and taken to the Worcester Police Department.  (*Id.* at 44).  She was then transported

to MCI-Framingham, where she was held overnight. (*Id.* at 51-52). The following day, Parks appeared at the East Brookfield District Court and was released on personal recognizance. (*Id.* at 54). Having no means of transportation, she walked back to her apartment. (*Id.*). Sergeant Fontaine did not participate in the arrest or detention of Parks, and he appears to have been unaware that it occurred until the commencement of this action. (Ex. 6 at 18).

On June 10, Parks, represented by attorney Roger F. Banks, moved to dismiss the charges against her for assault and battery and to expunge her record. (Ex. 15, 16, 17). Attorney Banks submitted an affidavit asserting that the actual identity of the female who allegedly assaulted Earl Smith was Dawn Lemelin. (Ex. 15). Accordingly, the charges against Parks were dismissed and the motion to expunge her record was granted. (Ex. 16). Parks asserts that she suffered emotional distress as a result of the experience of being arrested and that she eventually required psychiatric treatment. (*Id.* at 78-79).

On May 24, 2010, Parks filed a seventeen-count complaint in the Worcester Superior Court against the Town of Leicester, Fontaine, the City of Worcester, and Officer "John Doe." The complaint asserted claims under 42 U.S.C. § 1983 for violations of the Fourth Amendment (Counts 1-4), under Mass. Gen. Laws ch. 12, § 11I (Counts 5-8), and for negligence (Counts 9-12) against all defendants. It also alleged false arrest and false imprisonment by Officer "John Doe" (Counts 13-14), intentional infliction of emotional distress by Fontaine and Officer "John Doe" (Counts 15-16), and assault by Officer "John Doe" (Count 17). Defendants removed to this Court, which has jurisdiction under 28 U.S.C. §§ 1331, 1367.

On September 10, 2010, the Town of Leicester and Fontaine filed a motion to dismiss the counts against them for failure to state a claim. In her opposition, plaintiff agreed to dismiss

without prejudice her claims against Fontaine based on negligence and intentional infliction of emotional distress.

While the motion to dismiss was pending, plaintiff filed a motion to amend her complaint. The Court allowed her to add the following allegations:  (1) that plaintiff complied with the presentment requirements of Mass. Gen. Laws ch. 258, § 4 as to both the City of Worcester and the Town of Leicester, and (2) that the facts known to Fontaine when he obtained a criminal complaint against plaintiff did not establish probable cause to support a criminal complaint or an arrest warrant.

Plaintiff amended the complaint on February 23, 2011, and defendants moved to dismiss the complaint as amended.  The Court granted that motion as to all claims under Mass. Gen. Laws ch. 12, § 11I (Counts 5-8) and as to the negligence claim against the Town of Leicester (Count 9).

Defendants Fontaine and the Town of Leicester have now moved for summary judgment as to the § 1983 claims (Counts 1 and 3).  After that motion was filed, the parties stipulated to the dismissal of all claims against Officer John Doe and the City of Worcester (Counts 2, 4, 10-14).

## II.    <u>Standard of Review</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Essentially, Rule 56[] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In

making that determination, the Court views "the record in the light most favorable to the

nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25

(1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse

party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving

party may not simply "rest upon mere allegation or denials of his pleading," but instead must

"present affirmative evidence."  *Id.* at 256-57.

## III.    Analysis

### A.    § 1983 Claim Against Officer Fontaine (Count 1)

Section 1983 provides a cause of action against any person who, acting under color of

state law, deprives an individual of a right, immunity, or privilege secured by the constitution or

laws of the United States.  *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 621 (1st Cir. 2000).

Sergeant Fontaine, a police officer employed by the Town of Leicester, was clearly acting under

color of state law during the course of the events that gave rise to this action; the only dispute is

whether his actions either deprived plaintiff of a constitutional right or caused such a deprivation.

The Fourth Amendment guarantees the right "to be secure . . . against unreasonable

searches and seizure."   This protection, which is applicable to the states under the Fourteenth

Amendment, "demands that an arrest be supported by probable cause." *Santiago v. Fenton*, 891

F.2d 373, 383 (1st Cir. 1989) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Plaintiff alleges that

Fontaine violated her rights under the Fourth Amendment by preparing, without probable cause, a

criminal complaint against her that led to her arrest.  Defendants deny that Fontaine's action

constitutes a violation of the Fourth Amendment and contend that to the extent that he did

infringe plaintiff's constitutional rights, he is entitled to qualified immunity.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The First Circuit has adopted the two-part test for qualified immunity that was articulated by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223 (2009). *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). Under *Pearson* and *Maldonado*, the relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* Conducting each step of this analysis in sequence "promote[s] the development of constitutional precedent." *Id.* at 270. However, courts "have discretion to decide whether, on the facts of a particular case, it is worthwhile to address first whether the facts alleged make out a violation of a constitutional right" and, if it is not, to avoid the first step where immunity is established at the second step. *Id.* at 269-70.[2]

## 1.   Alleged Violation of a Constitutional Right

Defendants contend that Fontaine's actions did not violate the Fourth Amendment for two reasons: (1) because by filing a criminal complaint against plaintiff, Fontaine did not cause her arrest under principles of proximate causation, and (2) because Fontaine's error of mistaken identity was reasonable under the circumstances.

---

[2] *See also Buchanan v. Maine*, 469 F.3d 158, 168 (1st Cir. 2006) ("[T]he level of specificity at which the first prong [of the qualified immunity analysis] is analyzed may change depending on a given inquiry's utility in further elaborating the law.").

a.      **Proximate Causation**

The parties dispute whether to analyze plaintiff's claim as one for malicious prosecution (because Fontaine allegedly filed a baseless application for criminal charges) or unlawful arrest (because that application led to plaintiff's eventual arrest).  As to the first theory, defendants contend that a claim for malicious prosecution cannot form the basis for a viable § 1983 claim. As to the second, they assert that the discretionary decision of the state court to issue an arrest warrant (which Fontaine did not request) broke the causal chain between his conduct and the allegedly unconstitutional seizure.

Conduct that satisfies the elements of a common-law claim for malicious prosecution can give rise to liability under § 1983, but the two claims are distinct.  In *Britton v. Maloney*, 196 F.3d 24 (1st Cir. 1999), the First Circuit considered the viability of a Fourth Amendment claim based on a malicious-prosecution theory.[3]  The court began by noting the consensus in other circuits that "state actors who pursue malicious prosecutions against others may be held to have violated the Fourth Amendment . . . ."  *Id.* at 28.  However, it went on to explain that the overlap between the elements of the common-law tort and the federal cause of action is not complete:

> To acknowledge similarities between a malicious prosecution claim and a Fourth Amendment claim is not to say that the two causes of action are identical in every respect, or that proof of the former will always suffice as proof of the latter.  After all, the Fourth Amendment does not speak of unreasonable "prosecutions," and instead refers only to unreasonable "searches and seizures" . . . .  For a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must have imposed some deprivation of

---

[3] *Britton* followed the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 271 (1994), that no cause of action for malicious prosecution exists under § 1983 under a theory of substantive due process.  However, that holding did not preclude such a claim based on the right to be free from unreasonable searches and seizures. *See Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001) (holding, with respect to § 1983 claims based on malicious prosecution, that "[t]he Fourth Amendment . . . provides potentially more fertile soil" than substantive due process).

> liberty consistent with the concept of a "seizure."  The crux of the inquiry is whether a "seizure" occurred, for as we have stated before, the essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself, not necessarily from the analogous common law tort.
>
> Expressed differently, the constitutional violation lies in the deprivation of liberty accompanying the prosecution rather than in the prosecution itself.

*Id.* at 28-29 (internal citations and quotation marks omitted).  Accordingly, the court held that an officer did not violate the Fourth Amendment by filing criminal charges in that case because "those charges never cause[d] the [person charged] to be arrested or detained."  *Id.* at 29.

However, the court in *Britton* made clear that such conduct can constitute a constitutional violation where the officer's decision to file charges does in fact cause the plaintiff to be arrested without probable cause.  It acknowledged that claims against an investigating officer for malicious prosecution or, in the alternative, unlawful arrest in practice often appear indistinguishable, because "[i]n many cases, . . . the filing of criminal charges triggers the issuance of a warrant which leads to an arrest and thereby effects a 'seizure.'"  *Britton,* 196 F.3d at 29.  However, because plaintiff must show an actual seizure to state a claim under the Fourth Amendment, malicious prosecution, standing alone, is not a *per se* constitutional violation.  *See, e.g.,* *Moreno-Medina v. Toledo*, 2012 U.S. App. LEXIS 931 (1st Cir. Jan. 17, 2012) ("[A] plaintiff seeking to bring a malicious prosecution claim under Section 1983 must do more than simply satisfy the elements of the common law tort of malicious prosecution.").

Thus, regardless of whether such a claim is framed as one for malicious prosecution or one for unlawful arrest, the underlying question remains whether the officer's initiation of criminal proceedings "subjects, or causes to be subjected," the plaintiff to an unlawful seizure.  42 U.S.C. § 1983.  Here, because plaintiff's arrest clearly was a "seizure" within the meaning of the Fourth

Amendment, the relevant inquiry is whether Fontaine's application for a criminal complaint caused that arrest.[4]

Causation under § 1983 is evaluated according to common-law tort principles.  *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009).  Under that approach, an officer is deemed to have caused a person to be subjected to constitutional deprivation if his actions "'set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  *Id.* at 50 (quoting *Gutierrez- Rodriguez*, 882 F.2d at 561).  Thus, an official may be liable for "those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties."  *Id.*  Defendants contend that such a causal connection is lacking in this case.

Defendants' first argument is that the state court's issuance of the arrest warrant broke the causal chain between Fontaine's actions and the arrest.  It is true that Fontaine did not check a box on the criminal-complaint application requesting an arrest warrant.  Nonetheless, the state court's action was a reasonably foreseeable consequence of his application.  Massachusetts law authorizes a district court to issue an arrest warrant, whether or not a warrant is specifically requested.  Mass. Gen. Laws ch. 276m, § 22 ("Upon complaint made to any justice that a crime has been committed, . . . if it appears that a crime has been committed, [he] shall issue a summons or warrant . . . .").  Rule 6 of the Massachusetts Rules of Criminal Procedure provides that a court may issue an arrest warrant (as opposed to a summons) whether or not one is specifically

---

[4] In denying defendants' motion to dismiss plaintiff's § 1983 claim, the Court noted that it was "unclear from plaintiff's filings whether Fontaine played a role in obtaining a warrant for [plaintiff's] arrest."  (Mar. 9, 2011 Order, at 6 n.2).  As defendants indicate, however, the evidentiary record now shows that he did not.  (Ex. 1 at 54-55; Ex.3; Ex. 6 at 19).  Because Fontaine was not directly involved in obtaining the warrant for plaintiff's arrest or in executing that warrant, he may not be liable for directly subjecting plaintiff to an unlawful arrest.

requested by the officer who applied for the criminal complaint.  Mass. R. Crim. P. 6(a)(2) ("The District Court may authorize the issuance of a warrant in any case . . . .").[5]  Fontaine's application alleged that plaintiff committed assault and battery with a dangerous weapon on a person over sixty years old.  That offense is a crime of violence and a felony punishable by imprisonment for up to two-and-one-half years.  Mass. Gen. Laws ch. 265, § 15A.  Considering the potential dangerousness of the suspect, the issuance of a warrant was a reasonably foreseeable consequence of Fontaine's initiation of criminal proceedings against plaintiff.[6]

Defendants also contend that plaintiff's arrest was not foreseeable because the execution of the warrant did not occur for almost a year after it was issued.  As a principle of proximate causation, "[t]he passage of time can certainly reduce the legal significance of a particular contributing act."  *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997).  However, remoteness in time is significant only if the temporal lapse and the operation of other contributing factors are such that "the effect of the actor's conduct may thus become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors which have contributed."  Restatement (Second) of Torts § 433 cmt. f.  Here, that is not the case.  Officer DeCaire described Operation Falcon as a periodic operation conducted by the U.S. Marshals Service to apprehend persons with outstanding warrants.  (Ex. 6 at 7-8).  Because it was reasonably foreseeable that a warrant would issue as a result of Fontaine's application, it was also

---

[5] One exception to that authority, which is not applicable here, prohibits issuance of a warrant "where the accused is a juvenile less than twelve years of age."  Mass. R. Crim. P. 6(a)(2).

[6] Moreover, although it is true that Fontaine did not request a warrant, the form itself indicates that the checkbox is to be completed by the prosecutor, not the complaining officer.  The text next to the checkbox states "WARRANT is requested because prosecutor represents that accused may not appear unless arrested."  (Ex. 3).  Thus, Fontaine may have completed the application in exactly the same manner as he would have if he expected or intended a warrant to issue.

reasonably foreseeable that the arrest warrant, once outstanding, would eventually be subject to execution.  That would be true whether the execution occurred a week after the warrant issued or a year later.

Finally, defendants suggest that it was not reasonably foreseeable that the victim of the assault would mis-identify his niece and assailant as "Dawn Spencer."  That fact, however, merely bears on whether the officer had a sufficient basis for probable cause.  *Cf. Forest v. Pawtucket Police Dep't*, 377 F.3d 52, 57 (1st Cir. 2004) ("[P]olice officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause.").  It does not establish whether plaintiff's arrest was a reasonably foreseeable consequence of the application for a criminal complaint that Fontaine prepared.

In sum, because it was reasonably foreseeable that filing an application for a criminal complaint against plaintiff relating to a violent crime would result in her eventual arrest, summary judgment on the grounds that Fontaine did not "cause" that arrest will be denied.

### b.    Probable Cause

Nor may summary judgment be granted on the grounds that Fontaine made an innocent and reasonable mistake.  Defendants rely on the settled principle that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."  *Hill v. California*, 401 U.S. 797, 802 (1971).[7]  However, the issue here is not simply the application of the Fourth Amendment's reasonableness standard to an arresting officer's conduct.  Rather, it is whether Fontaine could

---

[7] This rule reflects the fact that the Fourth Amendment prohibits only unreasonable seizures, and that "sufficient probability, not certainty, is the touchstone of reasonableness" for those purposes.  *Id.* at 804.

permissibly rely on the fact that plaintiff's criminal-history record showed the same name as the actual suspect to establish probable cause against plaintiff.

In general, an officer may not be liable under § 1983 for mere negligence in investigating a crime and reaching a probable cause determination. *See Aponte Matos v. Toledo-Davila*, 135 F.3d 182, 187 (1st Cir. 1998) (holding, in rejecting a challenge to a search warrant obtained based on false information, that "[i]t is not enough to allege negligence or innocent mistake") (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Instead, liability attaches only when the investigating officer provides false information "knowingly and intentionally, or with reckless disregard for the truth." *Aponte Matos*, 135 F.3d at 187. Plaintiff contends that Fontaine is liable under this standard because his decision to base a probable-cause determination solely on the basis on her name evinced a reckless disregard as to the true identity of the suspected assailant.

In general, an officer's good-faith reliance on information that turns out to be false may provide a valid basis for probable cause. Furthermore, the reasonableness of that reliance is amenable to summary judgment unless there are disputes as to material facts. *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 8-9 (1st Cir. 2004) (discussing *B.C.R. Transport Co. v. Fontaine*, 727 F.2d 7, 10 (1st Cir. 1984)). Here, Fontaine's reliance on the victim's erroneous identification without verification could not, by itself, rise to the level of reckless disregard. *See Forest*, 377 F.3d at 57 ("[P]olice officers can justifiably rely upon the credible complaint by a victim to support a finding of probable cause."); *United States v. Santana*, 342 F.3d 60, 66 (1st Cir. 2003) ("Failure to investigate . . . does not evidence a reckless disregard for the truth."). Plaintiff therefore cannot base her § 1983 claim solely on Fontaine's failure to confirm the assailant's true name from the victim at the scene of the crime.

14

Nonetheless, it is troublesome that Fontaine, in concluding that plaintiff was the assailant, relied on the mere coincidence that the name that the victim provided matched the name in the database.[8]  The probability of multiple persons with the same name residing in a single geographic region—at least one as populous as Worcester County—is not negligible.  Basing probable cause solely on a similarity of name could create a substantial risk of error.  Arguably, an officer who pursued such a practice would be acting in reckless disregard of the truth.

Faced with a similar set of facts, however, the Fifth Circuit has held that such an error does not violate the Fourth Amendment.  In *McAllister v. Desoto County*, 2012 U.S. App. LEXIS 8858 (5th Cir. May 1, 2012), that court considered the arrest of an innocent woman named Connie McAllister following a police investigation of a drug dealer known as Connie Mac. During several controlled sales, the police had noted the license plate number of a car parked in the suspected dealer's driveway and confirmed that the vehicle was registered to "Connie McAllister."  They then searched a police database that contained information about persons who had been previously arrested or jailed.  The plaintiff, who had previously been arrested on a misdemeanor offense but was not involved with the drug activity that was under investigation, was the only person listed in the database by that name.  From her record, the police obtained various identifying information, including her date of birth and social security number.  Using that information, the officers eventually obtained a warrant, located the plaintiff, and arrested her.

The Fifth Circuit held that the mistaken arrest of the innocent McAllister did not amount

---

[8] Fontaine testified that the victim may have provided the approximate age of the female assailant and that he may have used the additional information in conducting his search of available databases.  (Ex. 1 at 30). However, Fontaine admitted that he was uncertain as to whether he actually obtained that information, and plaintiff denies that any information other than a name was used.  (*Id.*).

to a violation of the Fourth Amendment.  It relied on the Supreme Court's statement in *Hill v.*

*California*, 401 U.S. 797 (1971), that "sufficient probability, not certainty, is the touchstone of

reasonableness" under the Fourth Amendment.  *Id.* at 804.  Based on officers' testimony that it is

not uncommon for persons who sell drugs to have prior-arrest records, the court ruled that "the

officers reasonably believed that the drug dealer's information would appear in the database" and

that "the Connie McAllister in the [computer database] was the drug dealer."  *Id.* at *16.  It

therefore concluded that the identification of plaintiff in the database established a sufficient

likelihood that she was the suspected drug dealer to establish probable cause against her.

The Fifth Circuit's application of *Hill* is not established law in this district.  Nor is it

especially persuasive.  The decision in *Hill* addressed the reasonableness of an officer's mistake

when executing a warrant in the field, not the requirements of an investigation to establish

probable cause.  In *Hill*, the officer-defendants had arrested a person with a different name than

the suspect named in the warrant but of a similar physical description.  The Supreme Court held

that the officers' mistake did not give rise to § 1983 liability because the officers had made an

objectively reasonable, albeit erroneous, determination as to the identity of the person arrested.

However, the determination that their mistake was reasonable was predicated on the fact that the

officers had previously established probable cause to arrest the actual suspect.  *See Gero v.*

*Henault*, 740 F.2d 78, 84-85 (1st Cir. 1984) ("*Hill* [has] been construed, and rightly so, to mean

that *where there is . . . probable cause for arrest . . .* the only question is whether it was

reasonable for the arresting officers to believe that the person arrested was the one sought."

(emphasis added)).  In explaining its decision, the court noted:

> The police unquestionably had probable cause to arrest [the suspect]; they also had

16

his address and a verified description. The mailbox at the indicated address listed
[the suspect] as the occupant of the apartment. Upon gaining entry to the
apartment, they were confronted with one who fit the description of [the suspect]
received from various sources.

*Hill*, 401 U.S. at 802-803. Thus, the decision in *Hill* addressed only the reasonableness of an

officer's judgment in identifying a person as the suspect who is sought and against whom a

warrant has issued. Here, by contrast, the arresting officers did not mistake plaintiff for the

person who was named in the warrant—she *was* the subject of the warrant. The decision in *Hill*

does not appear to bear directly on the issue here: whether a coincidental match between a

suspect's name and the name in a database record is sufficient to establish probable cause against

the person listed in the database.

   In any event, it is not necessary in this case to decide whether the court in *McAllister* was

correct in interpreting *Hill* to apply to such circumstances. As discussed in the following section,

Fontaine is protected from liability at the second step in the qualified immunity analysis, even if his

conduct technically violated plaintiff's rights. The Court will therefore avoid the first step of that

analysis and decline to evaluate the constitutional holding of the Fifth Circuit in *McAllister*. *See*

*Maldonado*, 568 F.3d at 269-70.

## 2.    Clearly Established Law

   For purposes of the second step of the qualified-immunity analysis, "[a] right is clearly

established only if it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011). Put

another way, the court must determine "(a) whether the legal contours of the right in question

were sufficiently clear that a reasonable officer would have understood that what he was doing

17

violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right." *Mlodzinski v. Lewis*, 648 F.3d 24, 33 (1st Cir. 2011). Here, the Court finds that qualified immunity applies because in 2007 the legal contours of the right in question were not clearly established.

Of course, "[i]t has been clearly established for a very long time that the Fourth Amendment requires that arrests be based on probable cause." *Abreu-Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir. 2001) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Moreover, the *Britton* decision made clear in 1999 that the filing of baseless criminal charges violates the Fourth Amendment when that filing "triggers the issuance of a warrant which leads to an arrest and thereby effects a 'seizure.'" *Britton*, 196 F.3d at 29. However, the question at the second step of the qualified immunity analysis is not whether the right at issue has been clearly established at an abstract level; rather, the issue is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Soto-Torres*, 654 F.3d at 158. Put another way, the question is whether a reasonable officer clearly would have known that he could not base a probable cause determination on a match between a suspect's name and the name of a person identified in a database record.

To this Court's knowledge, no decision in this circuit clearly answered that narrower question prior to the actions that are at issue in this case. Moreover, since then, the Fifth Circuit has determined that such conduct is not unconstitutional. *See McAllister*, 2012 U.S. App. LEXIS 8858. Obviously, *McAllister* was not established law at the time when Fontaine conducted the database search and prepared the criminal-complaint application against plaintiff. However, the fact that the court in *McAllister* reached the decision it did suggests that a reasonable officer also

18

might have made the same judgment.

Thus, both the absence of a clear rule at the relevant time and the subsequent development of caselaw in another circuit that affirms Fontaine's actions preclude a finding by this Court that Fontaine acted in violation of clearly established law.  Fontaine is therefore protected from liability by qualified immunity.  Accordingly, summary judgment will be granted in favor of Fontaine as to the § 1983 claim.

### B.      **Municipal Liability Against the Town of Leicester (Count 3)**

Plaintiff also contends that the Town of Leicester is liable for Fontaine's actions.  That claim rests on the town's alleged failure to train, supervise, and discipline its police officers.

To establish municipal liability, a plaintiff must show that "the municipality *itself* causes the constitutional violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Monell v. Deptartment of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  Thus, the plaintiff is required to demonstrate both the existence of a policy or custom and a "direct causal link" between that policy and the alleged constitutional deprivation.  *Harris*, 489 U.S. at 385; *see also Monell*, 436 U.S. at 694 (policy must be the "moving force [behind] the constitutional violation"); *Santiago v. Fenton*, 891 F.2d at 373, 381-82.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

A claim against a municipality under § 1983 is "most tenuous where [it] turns on a failure to train."  *Id.* at 1359.  To give rise to liability in such an action, "a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons

19

with whom the [untrained employees] come into contact.'" *Id.* (quoting *Canton*, 489 U.S. at

388).  *See also Young v. City of Providence*, 404 F.3d 4, 26-27 (1st Cir. 2005) (holding that,

under *Monell*, "any proper allegation of failure to train . . . must allege that [the officer's] lack of

training caused him to take actions that were objectively unreasonable" and that "the identified

deficiency in [the training program was] closely related to the ultimate injury.").

Here, plaintiff contends that these failures demonstrate a custom or policy of deliberate

indifference on the part of the town toward the rights of its citizens.  However, plaintiff neither

identifies a substantial deficiency in the town's training program nor connects any alleged

deficiency to her arrest.  It is not the case that the town failed to provide training related to proper

police investigations and arrests; on the contrary, it has policy guidelines that describe proper

investigation and arrest procedures.  (Ex. 12, 18).  Plaintiff does not identify a defect in these

policies, and none is apparent on the face of the documents themselves.  (*Id.*).  Plaintiff asserts

only (1) that Fontaine admitted to being merely "somewhat familiar" with the town's investigation

policy, (2) that he did not recall by name certain judicial decisions relating to the probable-cause

requirement, and (3) that he did not follow proper procedures in the investigation at issue here.

Those allegations, however, do not make out a claim of deliberate indifference.  An

officer's characterization of his knowledge of applicable standards as "somewhat familiar" is not

sufficient to show a policy of inadequate training.  Nor is there any requirement that a police

officer be capable of reciting Supreme Court cases by name.  Finally, although plaintiff states that

Fontaine did not follow proper procedures in the investigation, she neither draws a connection

between those alleged omissions and a failure to train nor alleges that the omissions, to the extent

they resulted from inadequate training, are causally related to her injury.  In any event, mere

imperfection in the implementation of a town's policy, even if proved, does not show the kind of deliberate indifference necessary to give rise to municipal liability.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing final policy.").

Because the evidence does not show a policy or practice of deliberate indifference that resulted in Fontaine causing plaintiff's arrest, summary judgment will be granted as to the municipal liability claim against the town.

## IV.   Motion to Strike

Because the Court will grant defendants' motion for summary judgment, it is not necessary to address their motion to strike portions of plaintiff's legal memoranda as to that motion for misstating the evidence.  Accordingly, the motion to strike will be denied as moot.

## V.   Conclusion

For the foregoing reasons,

1. The motion of defendants for summary judgment is GRANTED as to the § 1983 claim against Fontaine in count 1 and the municipal liability claim against the Town of Leicester in count 3, and

2. The motion of defendants to strike portions of plaintiff's statement of material facts and opposition memorandum is DENIED AS MOOT.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 7, 2012